IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARION PARHAM, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 18 C 5316 |
| WEXFORD HEALTH SOURCES, INC. and GHALIAH OBAISI, as independent executor of the estate of Saleh Obaisi, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Marion Parham has sued Wexford Health Sources, Inc. and Dr. Saleh Obaisi (actually his claim against Dr. Obaisi, who is now deceased, is against the executor of his estate). Parham's fourth amended complaint also included claims against two Illinois Department of Corrections employees—Laura Haven and Lisa Bishop—but those claims were later dismissed. Wexford and Dr. Obaisi's estate have moved for summary judgment.

Parham's claims against Dr. Obaisi and Wexford arise from allegedly inadequate medical care while Parham was incarcerated at Stateville Correctional Center's Northern Reception Center in 2016. In his response to the pending motion for summary judgment, Parham makes reference to his improper placement in a top bunk despite having a lower bunk permit, but his fourth amended compliant asserts no claims against Wexford or Dr. Obaisi for that, nor has he pointed to any evidence that they were

responsible for his bunk placement. The Court will thus confine its discussion to Parham's medical care claims, the only claims asserted in his complaint.

The evidence reflects that Parham was incarcerated at the NRC from July 1 through August 15, 2016, when he was released on parole. The NRC is typically a facility where incarcerated persons are housed for a matter of weeks before transfer to a different Illinois Department of Corrections facility. Parham, however, was released on parole from the NRC.

Years before arriving at Stateville, Parham suffered a severe fracture of his right leg. Surgery was required to set the broken bone, including placement of a rod and screws.

On or about July 13, 2016, at the NRC, Parham fell from the top bunk in his cell. He has testified that following the fall, he had "real bad pain" in his right leg—the one that he had previously broken. Parham Dep. at 18. His cellmate pressed an "emergency button," but no one came for several hours, Parham says. Finally an officer came and said he would report Parham's complaint to a nurse. But he was not taken to see a nurse or any other medical personnel. *See id.* at 25. He submitted a grievance seeking medical attention and then was taken for medical treatment—initially to one or more nurses, he says, and then to Dr. Obaisi. *See id.* at 31.

During his deposition, Parham testified that he was taken to see Dr. Obaisi. He stated that Dr. Obaisi was "the only person" he saw, *id.* at 18, though he appeared to hedge this somewhat, saying "it was actually Dr. Obaisi, whatever his name was. I can't recall what was his name." *Id.* at 30; *see also id.* at 43 ("supposedly Dr. Obaisi, whatever his name was"). Parham testified that he told Dr. Obaisi that he had fallen out

of the top bunk and "had real bad pain" in his right leg. *Id.* at 18. He says that Dr. Obaisi ordered an x-ray "and found out my screws had broken, and I believe they were sticking out of my ligament." *Id.*[1] Parham asked for medical treatment, but he testified that Dr. Obaisi stated, "just wait till you go to your next institution." *Id.*; *see also id.* at 35-36. He says that he asked for pain medication, "and I didn't receive any." *Id.*; *see also id.* at 34, 36. Parham's level of pain, he testified, was "about an 8 and a half" on a scale of 1 to 10. *Id.* at 39.

Parham did not go to another institution after the Stateville NRC; as indicated, he was paroled from the NRC about a month after his medical visit. At the time of that visit, however, Parham did not know that he would be released just a month later. *See id.* at 35.

After his release from prison, Parham made a medical appointment with a physician in or around Vernon Hills, Illinois. The physician had further x-rays done, which, according to Parham, confirmed that the screws in his leg were broken and "sticking out." *Id.* at 46. The physician set up another appointment to schedule surgery to remove the screws. *Id.* at 46-47. It appears from Parham's testimony that he missed an appointment, or perhaps two, so the physician's office would not schedule him for a further appointment. And not too long after that, Parham was incarcerated again, so he was unable to follow through with having surgery done. Parham did eventually have surgery to remove the hardware in his right leg, but it did not take place until 2020.

During his deposition, defense counsel asked Parham to describe the person he had identified as Dr. Obaisi. Parham testified: "Only thing I know, he was, kind of,

---

[1] This all happened on the same date, Parham testified. *See* Parham Dep. at 36.

3

heavy set black guy. I know he was from Trinidad due to his accent because I asked him." *Id.* at 34. Dr. Obaisi, however, was from Syria, and another Wexford physician, Dr. Arthur Funk, has stated in an affidavit that "Dr. Obaisi was neither a heavy-set black guy nor did [he] have an accent typical of someone from Trinidad," Funk Affid. ¶ 79, though he offered no affirmative description of either Dr. Obaisi or his accent.

During Parham's deposition, defense counsel confronted Parham with records that reflected that he had actually seen Claude Owikoti, a physician assistant, on July 12, 2016 at the NRC following his fall. Parham testified that he did not remember seeing Owikoti and, when asked if Owikoti was "an older African American gentleman," said he did not know. Parham Dep. at 58. After this, Parham restated that "[t]he only person I really know pertaining toward this leg was seeing Dr. Obaisi, whatever his name was," and he further stated that Dr. Obaisi "was the person that really [sic] supposed to have seen and gave me the medical treatment and gave me medical help and help me get surgery done to my leg. Only thing I know is seeing him and seeing a nurse, that's all . . . ." *Id.* at 59.[2]

Parham was also confronted with Wexford records stating that PA Owikoti had prescribed him ibuprofen (400 mg) on July 12, 2016. Parham testified that he was not given ibuprofen or any other pain medication. *See id.* at 59-60. The same records stated that Owikoti was the professional who had ordered the x-ray of Parham's right leg.

---

[2] Defendants also offer evidence tending to show that at the time, Dr. Obaisi was medical director of Stateville Correctional Center, but not the NRC, and that another physician, Dr. Elazegui, was medical director of the NRC.

**Discussion**

Because the defendants have moved for summary judgment, the Court takes the evidence in the light most favorable to Parham and draws reasonable inferences in his favor. *See, e.g., Johnson v. Dominguez*, 5 F.4th 818, 824 (7th Cir. 2021). Summary judgment is appropriate if the movant shows that there is no genuine dispute regarding any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted). The mere existence of some metaphysical doubt regarding the material facts or, to put it another way, a mere scintilla of evidence, is insufficient. *Id.*; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Parham's claims arise under the Eighth Amendment's prohibition against cruel and unusual punishment. Deliberate indifference to an incarcerated person's serious medical needs constitutes "the unnecessary and wanton infliction of pain forbidden by the Constitution." *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 457–58 (7th Cir. 2020). To prevail on his claim against Dr. Obaisi, Parham must establish that he had "must establish (1) an objectively serious medical condition; and (2) [Dr. Obaisi's] deliberate indifference to that condition." *Id.* at 458.

Defendants contend, among other things, that Parham's claims fail on the first element. The Court disagrees; Parham has enough evidence on that particular element to require a jury to decide the point. Parham later had surgery for the exact same condition—the broken hardware in his right leg—for which he saw a medical professional at the NRC, and the record permits a reasonable inference that this

5

condition did not exacerbate between July 2016 and 2020, when he had the surgery. Thus a reasonable jury could infer that Parham's condition in July 2016 was the same as the one that a physician, in 2020, diagnosed as requiring treatment, *see id.*— defendants' evidence to the contrary notwithstanding. Even if not, Parham's testimony that in July 2016 he complained of severe pain, combined with x-rays showing broken hardware, is enough to permit a reasonable jury to find the condition "so obvious that even a lay person would perceive the need for a doctor's [further] attention," *id.*, rather than a brush-off of the sort that Parham says he was given—particularly with no pain medication in the interim.

The real problem with Parham's claim involves the responsibility of Dr. Obaisi for the alleged wrongdoing. Defendants argue that Parham has not offered evidence from which a reasonable jury could find that it was *Dr. Obaisi*, as opposed to some other Wexford professional, who refused to provide further treatment. Parham's response is to cite—exclusively—his own testimony that he saw Dr. Obaisi.

In the present circumstances, Parham's bare testimony is insufficient to permit a reasonable jury to find that Dr. Obaisi was, in fact, the medical professional he saw *and* who declined treatment for his injury. It's a problem of foundation, specifically, the basis for Parham's statement that it was Dr. Obaisi who met with him. Parham offers no evidence that he recognized the individual from previous encounters (in fact, he claims to have seen the person only once, *see* Parham Dep. at 17). He did not claim during his testimony, and he has offered no statement by affidavit, that the person he saw said he was Dr. Obaisi or was wearing a name tag so indicating. Nor does Parham contend that he was told by anyone else that Dr. Obaisi was the person he would be seeing.

Instead, all that he offers is his bare statement that he met with Dr. Obaisi, which even on its own terms is not all that solid, given Parham's statements during his deposition (quoted earlier) that he saw "Dr. Obaisi, whatever his name was" and that "it was actually Dr. Obaisi, whatever his name was. I can't recall what was his name."

In short, Parham lacks a foundation for his testimony that he saw Dr. Obaisi, as opposed to someone else. And there is no other evidence that would support Parham's identification of Dr. Obaisi: his medical records do not reflect an encounter with Dr. Obaisi, and they identify PA Owikoti as the medical professional who saw him at the relevant time. Finally, Parham's description of the "Dr. Obaisi" he saw is inconsistent with the actual Dr. Obaisi as described by Dr. Funk.

Under the circumstances, Parham's testimony that he met with Dr. Obaisi is enough to get him before a jury. His bare statement that he saw, or believes he saw, Dr. Obaisi lacks foundation and is inadmissible. Without that testimony, Parham's claim against Dr. Obaisi fails.

Parham also asserts a claim against Wexford. Given the fact that there is evidence that Parham did see *someone* from Wexford, the dismissal of his claim against Dr. Obaisi does not by itself require dismissal of his claim against Wexford. But under controlling Seventh Circuit law, a private entity like Wexford may be held liable under section 1983 only if—like a municipality—it had a policy, practice, or custom that caused the constitutional violation at issue. *See, e.g., Donald*, 982 F.3d at 463; *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016). Parham has offered no evidence at all regarding any policies, practices, or customs of Wexford that can be said to have caused the alleged denial of treatment. One might conceivably

7

surmise that if a Wexford physician or physician assistant decided to put off further treatment for an inmate who needed it but was about to be transferred (or released), he *might* have been acting pursuant to a Wexford policy or practice. But on the present record, this does not get above the level of a surmise, and a surmise isn't evidence. In sum, Parham cannot sustain a claim against Wexford either.

## Conclusion

For the reasons stated above, the Court grants defendants' motion for summary judgment and directs the Clerk to enter judgment in favor of defendants Wexford Health Sources, Inc. and Ghaliah Obaisi, independent executor of the estate of Saleh Obaisi. This is a final judgment because it disposes of all remaining claims against all of the defendants who remain in the case.

Date: January 24, 2022

_____
MATTHEW F. KENNELLY
United States District Judge